524 So.2d 942 (1988)
Evelyn B. TURNER
v.
Nancy TURNER.
No. 57609.
Supreme Court of Mississippi.
April 13, 1988.
James E. Upshaw, Lonnie D. Bailey, Upshaw, Williams, Biggers, Page & Kruger, Greenwood, for appellant.
Kay Farese Luckett, Memphis, Tenn., for appellee.
Before DAN M. LEE, P.J., and ANDERSON and GRIFFIN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
On November 22, 1982, the appellant, Evelyn Turner, was driving her Toyota station wagon from Clarksdale, Mississippi, to Grenada on Highway 49 near Glendora. The appellee and plaintiff below, Nancy Turner, was a passenger sitting in the back seat. At the intersection of Highway 49 and a county road known locally as "Black Bayou Road," the Toyota driven by Evelyn Turner collided with a 1980 Chevrolet half-ton pickup truck owned by T.C. Buford and operated by Terry Mize. The appellee, Nancy Turner, was injured as result of the collision. Nancy Turner brought suit against T.C. Buford d/b/a Buford Plantation, Terry Mize and Evelyn Turner. The case was tried before a jury in the Circuit Court of the Second Judicial District of Tallahatchie County on September 9, 10 and 11, 1985. At the close of the plaintiff's case, the lower court entered a directed verdict against Terry Mize. The jury returned a verdict in favor of appellee, Nancy Turner, against all defendants, including Evelyn Turner, jointly and severally, in the sum of $200,000.
Evelyn Turner appeals the lower court verdict, assigning six errors. Buford and Mize are not parties to this appeal.
For the reasons assigned below we reverse and remand.

FACTS
On the rainy, foggy afternoon of November 22, 1982, Evelyn Turner was driving toward Grenada on Highway 49 at 40 m.p.h. As she approached the intersection of *943 Highway 49 and a local road known as Black Bayou Road, she noticed the pickup truck driven by Terry Mize approach the intersection on Black Bayou Road. As she neared the intersection, she realized Mize was not going to stop at the stop sign. She threw on her brakes, but was unable to avoid the collision. Turner's car hit the truck above the back left wheel. The impact spun the truck around in the opposite direction and dragged Turner's car across the midsection of the highway. At trial Turner testified that because she had the right-of-way, she assumed Mize would stop; therefore, she did not slow down or blow her horn as she approached the intersection. Turner's testimony was corroborated by Mamie Caughey, a front-seat passenger in Turner's car.
Terry Mize was driving the pickup in the course of his employment with T.C. Buford d/b/a Buford Plantations. He testified that he pulled up to the stop sign on Black Bayou Road, eased up to the line, looked both ways twice, did not see anyone coming, and pulled into the intersection. He did not see the Turner vehicle until after the impact; therefore, he did not know how fast the Turner vehicle was coming or if the vehicle's lights were on. He admitted that he should have seen the Turner vehicle approaching the intersection and that if he had seen it, the collision would have been avoided. His testimony conflicted with that of Turner and Caughey as to whether or not he stopped at the stop sign  both Turner and Caughey claimed he did not stop.
Nancy Turner testified that she was riding in the right side back seat of Evelyn Turner's car headed toward Grenada on November 22, 1982. She was not paying attention to anything, but remembers thinking, "at this rate of speed we will never get to Grenada." She felt the car slow down abruptly, heard her mother-in-law say, "my God, he's not going to stop," and looked up in time to see the car hit the truck. After the impact, the car was over the center line. Her shoulder was numb initially; then, agonizing pain set in.
Nancy Turner suffered a three-part fracture of her right shoulder which required three surgical procedures, one to pin the fracture, one to remove the pins and one to remove a subsequently formed bony block. Nancy has sustained permanent loss of motion of her right arm and onset of post-traumatic arthritis which will require further surgery for shoulder fusion or a shoulder replacement. She currently suffers a great deal of pain and has nearly developed a frozen shoulder which amounts to a 20-50% disability to the upper extremities and about a 12% whole body disability. Her injuries will require some kind of treatment for the rest of her life and she will soon not be able to function at her job as a food stamp eligibility worker because it has become increasingly difficult for her to write (she is right-handed). The job requires her to fill out lengthy forms by hand. Her present damages were stipulated by both parties as follows:
Medical bills, $22,174.18; physical therapy, $2,228.00; medication, $53.20; lost wages $12,369.88.
Nancy Turner also offered the testimony of an economist as an expert witness, who testified as to the future earning capacity of one Nancy Turner's age, based on what she was earning at the time of the accident. At 50% disability she would be expected to earn $166,721 over the remainder of her working life.
At the close of her case, Nancy Turner moved for a directed verdict as to Mize and Buford, which was granted. Evelyn Turner moved for a directed verdict in her favor, but the motion was denied. Evelyn Turner did not call any witnesses in her defense, but Mize testified again in his own defense as to the issue of his and Evelyn Turner's joint negligence. While Mize admitted his negligence in not seeing a car in the intersection which he should have seen, he testified that if Evelyn Turner had slowed down and stayed on her side of the road, the accident would not have happened.
The two issues before the jury, then, were (1) Evelyn Turner's negligence in this collision, and (2) the amount of damages to *944 award plaintiff, Nancy Turner. The damage award returned by the jury is not an issue on this appeal.
DISCUSSION
I.
The Lower Court Erred in Overruling Appellant's Motion for Directed Verdict at the Close of Plaintiff's Case.
II.
The Lower Court Erred in Denying the Appellant's Request for Peremptory Instruction at the Close of All the Evidence.
III.
The Lower Court Erred in Overruling the Defendant's Motion Notwithstanding the Verdict Because the Verdict of the Jury was Contrary to Law and Against the Overwhelming Weight of the Evidence.
In her first three assignments of error, Evelyn Turner argues that the jury verdict as to her negligence was contrary to law and unsupported by the evidence. At the close of the plaintiff's case, Evelyn Turner moved for a directed verdict in her favor. The lower court denied her motion. Likewise, the lower court denied her peremptory instruction, and submitted the issue of her negligence to the jury. The lower court carefully considered her motion for j.n.o.v. and heard extensive oral argument; however, while recognizing that the issue of her negligence was a close question, the trial judge let the verdict stand.
This Court has often stated the requirements that a trial court must follow in passing a motion for directed verdict, peremptory instruction and j.n.o.v. As to a motion for directed verdict, this Court stated in Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 655 (Miss. 1975), that the trial court "must look only to the testimony adduced for the plaintiff and accord truthfulness to it and indulge all favorable inferences that could be drawn therefrom, and if either is sufficient to support a verdict, then the motion for directed verdict should be overruled." See also Gee v. Hawkins, 402 So.2d 825, 827 (Miss. 1981); Blackwell v. Dairymen, Inc., 369 So.2d 511, 513 (Miss. 1979); First Money, Inc. v. Frisby, 369 So.2d 746, 751 (Miss. 1979). Paymaster also states the requirements for passing on a peremptory instruction or a motion for j.n.o.v., thusly: "the evidence considered on request for a peremptory instruction or a judgment n.o.v. embraces the testimony on behalf of the plaintiff as well as that of the defendant, there being no difference between that considered for a peremptory instruction and a judgment n.o.v. since the latter is entertained only to correct the court's error in refusing a requested peremptory instruction." Paymaster at 656. Accord Astleford v. Milner Enterprises, Inc., 233 So.2d 524, 526 (Miss. 1970). The evidence, in passing on a request for peremptory instruction or j.n.o.v., will be viewed in the light most favorable to the party opposed to the motion, giving the benefit of all the favorable inferences that may be reasonably drawn from the evidence, and considering any uncontradicted evidence offered by the moving party. Weems v. American Security Insurance Co., 450 So.2d 431, 435 (Miss. 1984); Bay Springs Forest Products, Inc. v. Wade, 435 So.2d 690, 693 (Miss. 1983).
The issues at trial concerning Evelyn Turner's negligence were the speed of Turner's car, her assumption that Mize would stop, and Turner's obligation to keep a proper lookout. Turner claims that there was no evidence that she was driving at an excessive speed, no evidence that she failed to keep a proper lookout, and no evidence that her assumption that Mize would stop was unreasonable.
The evidence is undisputed that Turner was driving 40 miles an hour immediately before impact. The evidence is also undisputed that the speed limit on Highway 49 was 55 miles per hour. However, whether or not her speed was excessive under the circumstances was in dispute and created a question for the jury. As to the evidence that Turner failed to keep a proper lookout, it is undisputed that Turner saw Mize some 400 feet before impact. But the further *945 question is, in keeping a proper lookout, did she take any evasive action once she saw Mize was not going to stop. This question was also one for the jury, since Turner claims she tried to figure out how to avoid colliding only a few seconds before impact, and Mize claims she did not slow down or sound her horn. Finally, the question of whether Turner's assumption that Mize would stop was unreasonable under the circumstances was also one for the jury, especially in light of Turner's and Caughey's testimony where both claimed they saw Mize had not stopped before entering the intersection. Yet, Turner did not apply her brakes until after she entered the intersection.
The case of Jobron v. Whatley, 250 Miss. 792, 168 So.2d 279 (1964), is very nearly on "all fours" factually with the present case. There, the court said on the issue of speed:
We cannot say a reasonable inference could not have been drawn from the evidence in this case, that when the appellee saw the other car about to enter the intersection approximately the same distance away and travelling about the same speed, that the appellee at that point could reasonably have seen that the other driver was not making any attempt to stop at the stop sign and probably would not be able to do so... . Furthermore, appellant failed to make any effort to slow her vehicle from the speed at which she was travelling... .
Jobron, 250 Miss at 803, 168 So.2d at 283. The court concluded that the question of negligence based on these inferences was for the jury to determine. The recent case of Jones v. Hatchett, 504 So.2d 198, 204 (Miss. 1987), also stated that where the evidence and reasonable inferences on the issue of keeping a proper lookout were sufficient, a jury question arises. Such evidence and reasonable inferences are present in this case. Finally, as to the assumption that another driver will obey a stop sign, this Court stated in Jobron:
The assumption indulged in by the appellee ceased to be available to the appellee the moment she saw, or in the exercise of due care should have seen, that the car driven by Dr. White was not going to slow down and stop at the intersection, or do anything to avoid the danger until it was too late... . Whether the appellee abused her right to the assumption by not exercising due care ... is a question of fact for consideration by the jury... .
250 Miss. at 804, 168 So.2d at 284. See also Williams v. Weeks, 268 So.2d 340, 341 (Miss. 1972); Gates v. Green, 214 So.2d 828, 831 (Miss. 1968).
Although the question is close, there was sufficient evidence for the jury to find Turner's negligence. There was certainly enough evidence in dispute to create a jury issue. The trial court did not err in denying Turner's motions for directed verdict, peremptory instruction, or j.n.o.v.
IV.
The Lower Court Erred in Granting Jury Instruction No. D-1-5.
V.
The Lower Court Erred in Granting Jury Instruction No. D-1-7.
The two jury instructions complained of by Evelyn Turner were granted for defendant Terry Mize, against whom a directed verdict had already been granted. Mize is not a party to this appeal. The instructions read as follows:
D-1-5. The court charges the jury that in the state of Mississippi, out of regard for the safety of the public, it is the law that Evelyn Turner was required to operate her automobile on the highway at no greater speed than 55 miles per hour, and to decrease her speed when any special hazard exists with respect to road conditions, visibility, or other traffic, and to decrease her speed as may be necessary to avoid colliding with any person, vehicle, or other conveyance on the highway in compliance with legal requirements; and that Evelyn Turner was also required under the law to use due care in keeping a proper lookout for others using the said highway, and if you find from the preponderance of the testimony, that Evelyn Turner negligently failed *946 to observe any or all of said requirements, and that as a proximate result thereof, the accident occurred and Nancy Turner was injured, then it will be your duty to return a verdict against Evelyn Turner, as well as against the other defendant.
D-1-7. The court instructs the jury that defendant Evelyn Turner on the occasion and at the time in question was under the legal duty to keep a reasonable and proper lookout as she drove along the highway, and that she had no right to assume that the drivers of other vehicles on and near the highway would obey the law, but that at all times and under all circumstances she was required to be vigilant and to anticipate the presence of vehicles.
If you believe from a preponderance of the evidence in this case that the said Evelyn Turner did not keep such a reasonable and proper lookout, then, and in that event, the said Evelyn Turner was negligent, and if you further believe from a preponderance of the evidence that such negligence, if any, was a proximate contributing cause of the accident, it is your sworn duty to return a verdict against defendant Turner as well as against the other defendant.
The posture of this assignment of error is a bit unusual in that Evelyn Turner assigns it as error against the party who did not request the instructions in the first place. The parties who initially requested the instruction are not parties to this appeal. The instructions were given upon the request of defendants Buford and Mize after a directed verdict had already been granted against them. Evelyn Turner objected to the instructions. Nancy Turner's position as to the issue of Evelyn Turner's joint negligence with Mize at this point in the trial, however, was more of a side-line onlooker, since the real legal battle was between Mize and Evelyn Turner. However, the record indicates that Nancy Turner eventually adopted Mize's instruction by adding some clarifying words and phrases. She did not object to the instruction at any time. We are not presented today, then, with the interesting procedural situation of the plaintiff having also objected to instructions which are requested by one of several defendants on the issue of joint liability. Therefore, we reserve until another day a discussion as to the duty of a plaintiff's attorney in this particular kind of situation to make objections to erroneous instructions to protect his/her record on appeal.
On the premise that Nancy Turner adopted Mize's jury instructions, we turn to a discussion of the merits of these assignments of error. Evelyn Turner argues that the language in D-1-5, "and to decrease her speed as may be necessary to avoid colliding with any person, vehicle, or other conveyance on the highway in compliance with legal requirements," places an absolute duty on Turner to avoid a collision. Likewise, she argues that the language in D-1-7, "but that at all times and under all circumstances she was required to be vigilant and to anticipate the presence of vehicles," places an absolute duty on her to avoid a collision.
As to the duty to avoid a collision, in Bryan Brothers Packing Co. v. Grubbs, 251 Miss. 52, 168 So.2d 289 (1964), language in a jury instruction which required defendant to "avoid a collision with others," and language in another jury instruction which required defendant to decrease speed "as may be necessary to avoid collision with any person, vehicle, or other conveyance on the highway" was held to place upon the defendant "an absolute burden to avoid a collision, when the standard of the law is that of ordinary, or reasonable care." Bryan Brothers, 251 Miss. at 58, 168 So.2d at 291. The Court found it error to give these instructions, although it reversed because of a combination of erroneous jury instructions. In Mills v. Balius, 254 Miss. 353, 180 So.2d 914 (1965), the Court again looked at an instruction which required the driver to do the necessary acts to avoid a collision. Again, this Court found the instruction erroneous and this time reversed, because no other instruction designated what constituted negligence under the circumstances. Mills 254 Miss. at 361, 180 So.2d at 916. The more recent case of Crossley v. James, 365 So.2d 957 *947 (Miss. 1978), held that it was reversible error to grant an instruction which places upon defendant the burden of avoiding a collision. As Crossley states, "the question is whether or not plaintiff's driver was guilty of negligence in doing, or in failing to do, some specific thing which proximately caused or proximately contributed to the collision." Crossley, 365 So.2d at 959. The recent cases of Jones v. Hatchett, 504 So.2d 198, 204 (Miss. 1987), and White v. Miller, 513 So.2d 600, 601 (Miss. 1987), reiterate that "instructions on a driver's duty to drive at a speed sufficiently slow to enable him to stop within his range of vision `should not be interpreted or applied to impose on a driver an absolute duty to avoid a collision.'" We conclude, then, that D-1-5 was an erroneous instruction because it placed a higher burden on Turner than that of reasonable care.
As to the language in D-1-7 that Turner must be "vigilant and anticipate the presence of vehicles," such language was held to be erroneous in Peel v. Gulf Transport Co., 252 Miss. 797, 174 So.2d 377 (1965), because vigilant lookout is a higher burden of care than ordinary care which the law requires. Peel, 252 Miss. at 824, 174 So.2d at 389. This case was reversed because of a combination of erroneous instructions. This same "vigilant lookout" instruction was also held to be error in Acord v. Moore, 243 So.2d 55, 59 (Miss. 1971), and the case was reversed due to numerous erroneous instructions. Instruction D-1-7 was also error, then, because it placed a higher burden on Turner than reasonable care.
In Jones v. Phillips, 263 So.2d 759, 762-63 (Miss. 1972), this Court considered both "avoid the collision" and "vigilant lookout" instruction and found both erroneous. The case was reversed and remanded because both instructions, considered together, placed a higher duty upon defendant than the law requires. An example of the correct standard of care is found in Miles v. Duckworth, 481 So.2d 757, 758 (Miss. 1985), where this Court upheld an instruction that stated that if defendant "failed to keep a reasonable and proper lookout for other traffic and vehicles; or if he failed to have his vehicle under reasonable and proper control... . then such action or actions, if any, ... constitutes negligence."
As in Jones, we hold that these two instructions, when read together, placed a higher standard of care on Turner than reasonable care. These were the only two instructions given that went to the issue of Turner's negligence. Therefore, no other instruction spelled out what would constitute negligence as to Turner under the circumstances. This case must be reversed and remanded for a new trial on the issue of Evelyn Turner's negligence, with proper jury instructions.
Because of the disposition we make of this case as to these two assignments of error, we do not find it necessary to reach the last assignment of error.
We reverse and remand this case for a new trial on the issue of Evelyn Turner's negligence. Since defendants Buford and Mize have not joined the appeal to this Court, the directed verdict as to their negligence will stand. Likewise, the issue of damages returned by the jury for plaintiff Nancy Turner is not in issue on this appeal; therefore, the jury's verdict as to damages will stand.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.